IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Clayton Lee Felton, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:19cv1216 (LO/MSN) |
| | ) | |
| Harold W. Clarke, | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION

Proceeding pro se, Virginia inmate Clayton Felton ("Felton" or "petitioner") filed a

petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging the validity of his

convictions—entered in the Circuit Court for the City of Martinsville—of carnal knowledge,

inanimate objection penetration, sodomy, and aggravated sexual battery. See Dkt. No. 1.

Respondent has filed a motion to dismiss and Rule 5 Answer, supported by a legal brief.

See Dkt. Nos. 4-6. Petitioner, despite having been provided the notice required by Local Civil

Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 7], did not file an

opposition to respondent's motion.[1] For the reasons explained below, respondent's motion to

dismiss will be granted, and Felton's petition for writ of habeas corpus will be dismissed.

**I. Background**

On October 8, 2015, in the Circuit Court for the City of Martinsville, a jury convicted

Felton of three counts of sodomy, three counts of aggravated sexual assault, one count of carnal

---

[1] Petitioner did, however, file a somewhat cryptic message appended to which are copies of
institutional requests for access to Sussex I State Prison's Law Library. See Dkt. No. 15.
Petitioner asserts that the documents "show[] another way the state obstructs prisoners in legal
matters . . . ." Dkt. No. 15. This filing does not appear in any way responsive to respondent's
motion to dismiss and is thus not construed as response to the motion.

knowledge, and one count of inanimate object penetration. Record No. 171773, p. 13. On

January 7, 2016, the trial court sentenced petitioner to life plus eighty-eight years' imprisonment.

Case Nos. CL15000272-00, CL15000268-00, CL1500045-00.

Arguing that the evidence presented at trial was insufficient to support the convictions

entered against him, Felton appealed to the Court of Appeals of Virginia, which summarized the

facts unearthed at trial as follows:

> [T]he evidence proved that when the victim, appellant's daughter, was
> approximately thirteen years old, appellant asked the victim to massage his feet.
> She testified appellant requested that she touch his penis several times. The
> victim complied. The victim described the incidents and explained appellant was
> naked on his bed and that her brother, mother, and grandfather were elsewhere in
> the house.
>
> In September 2014, appellant told the victim to come to his room where he was
> naked on his bed. He told her to put her mouth on his penis and held her head and
> pushed it up and down. In November 2014, the victim's mother and grandfather
> were away for the day. When the victim's brother was asleep, appellant called to
> the victim and instructed her to bring him a beer, sit on the couch with him, and
> remove her pants and underwear. Appellant told her to bend over and he then
> forced his penis into her buttocks and moved it around, causing the victim pain.
> When they heard a car arrive at the house, appellant instructed the victim to get
> dressed quickly. The victim testified her buttocks hurt for some time after this
> incident. Another time, appellant told the victim to come to his room and shut the
> door. He told her to remove her pajama bottoms and get onto his face. Appellant
> put his mouth and tongue on the victim's vagina.
>
> The victim testified appellant also gave her an object that resembled a penis and
> told her to put it in her vagina and in her anus. She explained she tried to use the
> object as appellant watched. In December 2014, appellant told the victim to put
> her hand on his penis and move her hand on it. Appellant grabbed the victim's
> hand and moved her hand while she touched his penis.
>
> The victim explained she id not call for help during any of the incidents because
> she was scared that appellant would beat her. She stated that on previous
> occasions appellant had hit her with his hand and with a belt. Appellant
> threatened to beat her "half to death" if she told anyone what had occurred.
>
> The victim's mother, teacher, and guidance counselor all testified to changes in
> the victim's behavior during the time period when the abuse occurred.

Record No. 2048-15-3, pp. 76-77. The Court of Appeals thus denied plaintiff's petition for

appeal on July 8, 2016. See id. The Supreme Court of Virginia then followed suit, refusing

Felton's petition on April 24, 2017. See Record No. 161494.

Eight months later, on December 20, 2017, petitioner filed a petition for writ of habeas

corpus in the Supreme Court of Virginia, raising the following claims, verbatim:

1. Petitioner Clayton Lee Felton states that the Commonwealth of Virginia violated his U.S.
   Constitutional Rights of Due Process and a fair Trial by convicting him of crime(s)
   without proving each element of those crimes beyond a reasonable doubt.

2. Petitioner Felton states that he was denies his Constitutional Right to Effective assistance
   of Trial Counsel by Counsel's failure to object and challenge the clear deficiency of his
   Indictments which deprived the Trial Court of its Jurisdiction.

3. Petitioner Felton states that he was denied his Rights to the Effective assistance of Trial
   Counsel, by his Counsel's failure to properly object to and present argument to the trial
   court regarding the lack of penetration concerning the alleged act of fellatio upon the
   victim.

Id. After state respondents filed a motion to dismiss, petitioner filed a response which raised

new claims not included in his original petition, namely that the Commonwealth withheld

evidence and that petitioner was denied effective assistance of counsel based on counsel's

alleged failure to conduct a pretrial investigation or call a necessary witness at trial. See id. at

pp. 57-74. The Supreme Court of Virginia dismissed the petition on September 11, 2018 and,

citing Rule 5:7(e), specifically declined to review petitioner's newly-raised claims. Id. at p. 79.

Finally, on September 13, 2019, petitioner filed the instant petition, raising the following

claims:[2]

1. Ineffective assistance of counsel: counsel failed to conduct independent pretrial
   investigation.

---

[2] Petitioner's claims are somewhat rambling in nature and are thus presented here as they were
understood and construed by respondent. See Dkt. No. 13, pp. 3-4. Petitioner did not register
any opposition to respondent's construction of his claims, and the Court fails to discern any
mischaracterization in that construction.

1A.  Ineffective assistance of counsel: counsel was ignorant of the law.

1B.  The Commonwealth's witnesses were not credible, specifically because they were uncorroborated, one of the witnesses had been convicted on issues of fraud, a mental health professional stated that the witness did not know truth from fantasy and a state employee disregarded medical tests in her testimony.

1C.  Ineffective assistance of counsel: Trial counsel failed to object to highly questionable Commonwealth witness testimony.

2.   The Commonwealth failed to disclose exculpatory evidence that (1) the victim's mother had three convictions for crimes of moral turpitude and one for a controlled substance; (2) that the Sexual Assault Nurse Examiner ("SANE") stated "hymen present, no evidence of abuse"; "NA & ML Felton Juveniles v. Clayton Lee Felton 13 May 2015, Martinsville Juvenile and Domestic Relations Court Records NO conviction, no evidence of a crime."

3.   The state habeas court erred by not considering Felton's new claims raised in state habeas proceedings.

4.   Double jeopardy: the Commonwealth directly indicted Felton for claims without the benefit of a preliminary hearing and "was tried multiple times for the same event, same time same parties with no bill of particulars."

5.   Actual Innocence

Dkt. No. 13 (citing Dkt. No. 1).

## II. Standard of Review Under § 2254

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), however, limits a federal court's authority to grant such relief. Pursuant to AEDPA, when a state court has addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant the petition on that particular claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court

proceeding. 28 U.S.C. § 2254(d)(1)-(2). The question, then, "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

### III.  Exhaustion and Procedural Default

Before a state prisoner may file in federal court a petition for a writ of habeas corpus, the prisoner must first exhaust his claims in the state court system. 28 U.S.C. § 2254(b)(1)(A). Indeed, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In Virginia, to exhaust state remedies, "a petitioner must present the same factual and legal claims raised in the [federal] petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 587 (E.D. Va. 2006).

A successfully exhausted claim may nevertheless be deemed "procedurally defaulted" and barred from federal review if a state court denies that claim pursuant to an independent and adequate state ground. See Harris v. Reed, 489 U.S. 255, 259 (1989). And a federal habeas court may deem a claim not presented to the highest state court exhausted and barred from review "if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

Federal habeas petitioners may overcome procedural bars and receive review of their claims through a showing of cause and prejudice, see Gray v. Netherland, 518 U.S. 152, 162 (1996), or actual innocence, see McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). Another

exception exists for ineffective assistance of trial counsel claims (1) that are "substantial," (2) where the cause for the default related to "there being no counsel or ineffective counsel during the state collateral review proceeding," (3) where the state collateral review proceeding was the initial review proceeding in respect to the ineffective assistance of trial counsel claim, and (4) where state law requires that an ineffective assistance claim "be raised in an initial-review collateral proceeding." Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014). When these conditions are met, a federal court may consider the merits of an otherwise defaulted ineffective assistance claim. Martinez v. Ryan, 566 U.S. 1 (2012).

## IV. Analysis

Respondent argues that petitioner's claims are untimely, procedurally defaulted, meritless in the first instance, or that they suffer from a combination of these three deficiencies. See Dkt. No. 13. Petitioner does not appear to dispute that his petition is untimely or that many of his claims are procedurally defaulted. Instead, he argues in his petition that he is entitled to a finding of actual innocence and that any finding of untimeliness or procedural default should thus be excused. See Dkt. No. 1-1, p. 26 ("[F]iling deadlines exceptions exist when valid actual innocence claim acts as gateway to adjudicating habeas petition on the merits despite delay in pursuing one's right to habeas petition").

Because petitioner's actual innocence claim could serve to undermine both respondent's statute of limitations and procedural default arguments, its merits shall be addressed before considering respondent's proposed ground for dismissal.

### A.   *Actual Innocence*

"[C]laims of actual innocence are rarely successful," McQuiggin v. Perkins, 569 U.S. 383, 390 (2013), and "should not be granted casually," Wilson v. Greene, 155 F.3d 396, 404 (4th

Cir. 1998). To prevail as to such a claim, a petitioner must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

If a petitioner satisfies this burden, a reviewing court must then look to "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538 (2006). On the basis of that evidence, a reviewing court must determine whether "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 328. This standard is demanding: "The [actual innocence] gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." McQuiggin, 569 U.S. at 401.

In his petition, petitioner submits the following evidence in support of his actual innocence claim: (1) copies of state court records detailing the felony convictions entered against the victim's mother, who served as a witness for the prosecution; (2) medical records which purport to demonstrate that the victim showed no physical signs of having been sexually abused; and (3) a letter from the Henry-Martinsville Social Services Office which states that a "Family Assessment" had been conducted and concluded. See Dkt. No. 1-2, Att. 1-5. For the reasons that follow, this evidence does not satisfy the demanding standard espoused in Schlup and thus does not entitle petitioner to a finding of actual innocence.

First, the evidence with respect to the victim's mother's criminal convictions is neither new nor demonstrative of petitioner's actual innocence. Indeed, the victim's mother admitted at trial that she had previous felony convictions entered against her. See Dkt. No. 13, Ex. E. And,

as respondent correctly notes, "actual innocence" means factual innocence, not legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623 (1998). Here, where petitioner's proffered evidence would merely serve to impeach the victim's mother, it is insufficient to entitle petitioner to a finding of actual innocence, particularly where the jury in this case was already furnished with the information contained in petitioner's newly-submitted documents. See, e.g., Sawyer v. Whitley, 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of the [witness's] account."); Munchinski v. Wilson, 694 F.3d 308, 338 (3d Cir. 2012) (impeachment evidence generally insufficient to establish entitlement to finding of actual innocence).

The medical records petitioner has submitted similarly do not entitle petitioner to relief. These records state that the victim had a "redundant hymen" and showed "no breaks in skin, abrasions, redness or swelling." Dkt. No. 1-2, pp. 4-5. While this evidence—unlike the victim's mother's criminal record—may speak to petitioner's actual participation in the conduct for which he was convicted, it is not "new." Indeed, at trial, the jury was informed by a nurse practitioner that the victim had been examined on April 20, 2015, and that the nurse practitioner had been "unable to locate any tears to the victim's genital or anal area." Dkt. No. 13, Ex. E. The nurse practitioner also testified, however, that the genital and anal areas "heal very quickly," sometimes as quickly as forty-eight hours from the time of trauma. Id. Thus, although the evidence submitted by petitioner was not itself necessarily shown to the jury, the information that evidence contained was. Accordingly, through the proffered medical records, Felton has failed to offer "new" evidence that tends to disprove his involvement in the conduct for which he was convicted.

8

Finally, although the letter from the Henry-Martinsville Social Services Office petitioner submits may be "new," it does nothing to demonstrate that petitioner is factually innocent of the crimes for which he was convicted. Indeed, the letter states only that the office completed a "Family Assessment" which concluded that "[n]o additional services [were] needed" and that the case would thus be closed. Dkt. No. 1-2, Att. 5. So, although the letter postdates petitioner's criminal trial and therefore could not have been presented to the jury, it does not offer any new or contradictory facts with respect to petitioner's alleged conduct.

Even viewing the newly-submitted evidence cumulatively, it is clear that petitioner is not entitled to a finding of actual innocence. As noted, the majority of the proffered evidence was available to petitioner at the time of trial and was, in large part, actually presented to the jury, albeit in different forms or fashions. Petitioner has thus failed to satisfy the threshold requirement that he present "new reliable evidence," let alone convinced this Court that "no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 328. Consequently, petitioner's claim for a finding of actual innocence is denied.

**B.**     ***Statute of Limitations***

Having determined that petitioner is not entitled to a finding of actual innocence, respondent's arguments shall be addressed in turn. Respondent first argues that petitioner's submission is untimely and thus barred from review by the statute of limitations set out in § 2244(d).[3] See Dkt. No. 13, pp. 4-5. In relevant part, § 2244(d) requires a petitioner to file his federal petition for writ of habeas corpus no later than one year after the judgment against him

---

[3] As noted above, petitioner seems to concede this point, if indirectly. See Dkt. No. 1-1, p. 26 ("The petitioner contends that the filing deadlines exceptions exist when valid actual innocence claim acts as gateway to adjudicating habeas petition on the merits *despite delay in pursuing one's right to habeas petition* . . . .) (emphasis added).

becomes final. 28 U.S.C. § 2244(d)(1)(A). The running of the one-year limitations period is suspended, though, for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Here, the Supreme Court of Virginia denied petitioner's direct appeal on April 24, 2017. See Record No. 161494. Petitioner's conviction therefore became final ninety days later, on July 24, 2017, when the period for filing a petition for a writ of certiorari in the Supreme Court of the United States expired. See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012); S. Ct. R. 13.1. Consequently, the federal limitations period began to run on that date.[4]

The limitations window paused 149 days later, on December 20, 2017, when petitioner mailed his state habeas petition to the Supreme Court of Virginia. See Houston v. Lack, 487 U.S. 266 (1988); Dkt. No. 13, Ex. F (containing an affidavit from the records keeper of Sussex I State Prison's mailroom which tends to demonstrate that petitioner mailed his petition on December 20, 2017). On September 11, 2018, the Supreme Court of Virginia denied petitioner's petition, and the clock thus restarted the following day, September 12, 2018. The clock finally stopped on September 13, 2019—366 days later—when petitioner filed the instant petition. See Dkt. No. 13, Ex. F (stating that petitioner sent mail to the United States District Court for the Eastern District of Virginia on September 13, 2019). The limitations clock therefore ran for 515 days before petitioner filed his federal petition for writ of habeas corpus, 150 days more than

---

[4] The ninety-day period technically ended on July 23, 2017, but, because July 23, 2017 fell on a Sunday, the period is deemed to have closed on the following day—Monday, July 24, 2017. See Fed. R. Civ. P. 6(a)(1)(C).

petitioner was permitted under § 2244(d).  Consequently, it appears that the petition is untimely and must be dismissed.[5]

## C.    *Exhaustion and Procedural Default*

Timeliness aside, respondent asserts that the majority of the claims in the instant petition were not properly presented to and reviewed by the Supreme Court of Virginia and are thus barred from review in this Court.  Specifically, respondent asserts that Claims 1, 1A, 1C, 2, and 4 are procedurally defaulted.  For the reasons explained below, respondent is correct.  And because, as explained at several points in this Memorandum Opinion, petitioner has failed to demonstrate an entitlement to a finding of cause and prejudice or actual innocence through which he could bypass such a default, these claims must be dismissed.

### 1.    Ineffective Assistance of Counsel – Claims 1, 1A, and 1C

Claim 1 of the petition asserts that "Counsel Failed to Conduct [an] Independent Pre-trial Investigation."  See Dkt. No. 1-1, p. 4.  Claims 1A and 1C, which are based respectively on counsel's alleged ignorance of the law and counsel's failure to object to "highly questionable Commonwealth witness testimony," were not asserted as standalone claims in petitioner's petition but could constitute claims in their own right.  They have thus been extracted from the body of Claim 1 as it was presented by petitioner.

Regardless of the claims' current construction, though, it is clear that petitioner did not present these claims to the Supreme Court of Virginia.  Although petitioner raised ineffective

---

[5] For the reasons discussed above, petitioner may not rely on a finding of actual innocence to excuse the untimely nature of his filing.  A time-barred petition may also receive merits review if the petitioner can demonstrate an entitlement to a finding of equitable tolling, but such a finding is appropriate only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." See Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000).  Petitioner does not argue, nor does the record support, that he is entitled to equitable tolling in this case.

assistance claims in his state habeas petition, those claims dealt with counsel's failure to (1) contest the validity of petitioner's indictments and (2) object to the sufficiency of the evidence with respect to petitioner's alleged act of fellatio upon the victim. See Record No. 171773, p. 28.

This Court concludes that, in presenting those two claims to the Supreme Court of Virginia, petitioner did not, as he must, "fairly present" the instant federal claims to the state supreme court. Picard v. Connor, 404 U.S. 270, 275 (1971) (exhaustion requirement satisfied so long as a claim has been "fairly presented" to the state courts). To "fairly present" and thus satisfactorily exhaust federal claims, "the petitioner must show that both the operative facts and the controlling legal principles [of the federal claims were] presented to the state court." Gordon v. Braxton, 780 F.3d 196, 201 (4th Cir. 2015) (internal quotations omitted). Although the instant ineffective assistance claims would be analyzed under the same controlling legal principles as the claims actually presented to the state court, the operative facts of the two sets of claims are wholly distinct. And because petitioner would be barred from raising the instant ineffective assistance claims in state court were he to attempt to do so now, see Va. Code § 8.01-654(A)(2), the instant claims are procedurally defaulted and barred from federal merits review unless petitioner demonstrates an entitlement to relief pursuant to the doctrine espoused in Martinez v. Ryan, 566 U.S. 1 (2012).

Martinez held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 566 U.S. at 17. To demonstrate that the underlying ineffective assistance claim is "substantial," the petitioner must show that that claim has "some merit." Id. at 14.

12

To prevail as to an ineffective assistance of counsel claim, a petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668 (1984). To satisfy the deficient performance prong, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance." Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted). The prejudice component requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694.

Petitioner's defaulted ineffective assistance claims lack any merit and are thus unreviewable here. In Claim 1, petitioner grieves his trial counsel's apparent failure to conduct an adequate pretrial investigation. See Dkt. No. 1-1, p. 5. Petitioner, though, is unclear as to what information he believes a perfectly-conducted pretrial investigation would have uncovered such that the outcome of his case might have differed. Cf. Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) ("[Petitioner] claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said"). Petitioner obliquely suggests that counsel failed to discover the victim's mother's criminal convictions with which he could have impeached her credibility as a witness, resulting in prejudice to petitioner's defense. See Dkt. No. 1-1, pp. 8-9 ("The evidence here of previous felony convictions are a serious matter ... and Defense Counsel should have been aware of the convictions for "issues of moral turpitude" a serious challenge to the witness [sic] credibility").

But even assuming counsel's failure to discover a witness's criminal history constitutes deficient performance for purposes of the Strickland standard, it does not satisfy the prejudice element in this case. As stated above, the victim's mother admitted at trial that she had previously been convicted of crimes. Any evidence offered by defense counsel with respect to those convictions would have constituted cumulative impeachment evidence insufficient to change the outcome of the case. See Hash v. Dir. Dep't of Corrs., 278 Va. 664, 679 (2009) (finding in context of state habeas proceedings that, where witness had already been impeached during criminal trial, "any potential further impeachment … would [have been cumulative and would] not have yielded a reasonable probability of a different result at trial") (citing Lester v. Ayers, 267 F. App'x 725, 727 (9th Cir. 2008); Aldridge v. Dugger, 925 F.2d 1320, 1326 (9th Cir. 1991)). Consequently, Claim 1 lacks any merit, is thus not a "substantial" claim, and does not entitle petitioner to relief.

In Claim 1A, petitioner argues that his trial counsel was ineffective because he was "ignorant of the law." See Dkt. No. 1-1, p. 6 ("[Counsel] expressly admitted he was ignorant of the law, and the court's record shows that the petitioner is innocent of any crime"). But petitioner fails to specify what law of which counsel was unaware and has thus also failed to demonstrate how counsel's knowledge of the law in question would have led to a different result in petitioner's criminal trial. Petitioner's vague and conclusory assertion that his counsel was ineffective renders this claim "insubstantial" and warrants its denial. See Sanders v. United States, 373 U.S. 1, 19 (1963) (denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"); United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (in context of ineffective assistance claim requiring "concrete evidence" of what witness would have testified if called); Bassette, 915 F.2d 940-41. Accordingly, Claim

14

1A is not "substantial" and is thus denied.  And to the extent petitioner suggests that counsel was ignorant of the law with respect to his ability to impeach the victim's mother on the basis of her criminal convictions, that claim is, for the reasons stated above, denied.

Finally, in Claim 1C, petitioner argues that trial counsel was ineffective based on his failure to "object to highly questionable Commonwealth witness testimony." See Dkt. No. 1-1, p. 9.  Petitioner does not clearly specify what testimony was "highly questionable" or the manner in which it was so.  He therefore fails to demonstrate how counsel's objections could have changed the course or outcome of his trial.  For that reason, as was the case with Claim 1A, this claim fails. See Sanders, 373 U.S. at 19; Terry, 366 F.3d at 316; Bassette, 915 F.2d 940-41.

***

For the reasons stated above, petitioner's ineffective assistance of counsel claims are procedurally defaulted, and, because those claims are not "substantial," petitioner is not entitled to Martinez relief.  Consequently, Claims 1, 1A, and 1C must be dismissed.

### 2.     Failure to Disclose Exculpatory Evidence – Claim 2

In Claim 2, petitioner asserts that the Commonwealth of Virginia failed to furnish him with exculpatory evidence and thereby violated the doctrines espoused in Brady v. Maryland, 373 U.S. 83 (1963), and Pennsylvania v. Ritchie, 480 U.S. 39 (1986). See Dkt. No. 1-1, pp. 10-16.  Although petitioner presented this issue to the Supreme Court of Virginia, he did so only in his response to respondent's motion to dismiss his state habeas petition. See Record No. 171773, pp. 68-74.  As a result, invoking Rule 5:7(e) and deeming them "not properly before the Court," the Supreme Court of Virginia declined to review these claims. See Record No. 171773, p. 79.  Because the state court relied on an "independent and adequate" state ground in declining to review this claim, the claim is procedurally defaulted and barred from review here. See Cutchin

v. Pearson, No. 7:06cv10, 2006 WL 2659982, at *3 (W.D. Va. Sept. 15, 2006) (finding claims

presented to Supreme Court of Virginia and denied review pursuant to Rule 5:7 were

procedurally barred from review in federal court).

But because the proffer of a valid Brady claim naturally satisfies the cause and prejudice

requirements to excuse a procedural default, see Wolfe v. Clarke, 691 F.3d 410, 419-20 (4th Cir.

2012), the merits of petitioner's claim must be briefly addressed here. To prevail on a Brady

claim, a petitioner must establish (1) that the evidence in question is favorable to petitioner in

that it is either exculpatory or impeaching; (2) that the evidence was suppressed by the state,

either willfully or inadvertently; and (3) that prejudice ensued. See Banks v. Dretke, 540 U.S.

668, 691 (2004). The Court conducts its prejudice analysis mindful of the fact that Brady claims

"turn[] on the cumulative effect of all ... evidence suppressed by the government." See Kyles v.

Whitley, 514 U.S. 419, 421 (1995).

Here, petitioner suggests that the following evidence was not produced by the state: (1)

information related to the victim's mother's criminal convictions; (2) medical records that

purport to show an absence of physical signs of abuse present on the victim; and (3) Martinsville

Juvenile and Domestic Relation Court records related to a previously-dismissed case that

involved petitioner and the victim. It appears beyond dispute that these pieces of evidence are

material in that they could have served either to impeach witnesses or sow doubt in the mind of

the jury with respect to petitioner's commission of the alleged crimes. It is equally clear,

however, that the failure to provide these pieces of evidence did not prejudice petitioner.

First, it is clear that petitioner did not suffer any prejudice based on the state's alleged

failure to produce the records of the victim's mother's criminal convictions. As noted above, the

jury learned of the victim's mother's criminal history when she admitted to it on the witness

16

stand.  It is thus not at all clear what difference the Commonwealth's production of her criminal

records would have made at petitioner's trial.  Several federal courts have deemed unproduced

evidence that would have been cumulative to evidence actually presented at trial not to be

material in the first instance.  See. e.g., Byrd v. Collins, 209 F.3d 486, 518 (6th Cir. 2000)

("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a

witness whose credibility has already been shown to be questionable or who is subject to

extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and

hence not material."); United States v. Hernandez, 399 F. App'x 685, 687 (2d Cir. 2010) (where

the witness has already been "subject[ed] to extensive attack by reason of other evidence,"

undisclosed impeachment evidence on the same matter will be deemed cumulative).

The same can be said with respect to the victim's medical records.  Indeed, at trial, the

jury was informed by a nurse practitioner that the victim had been examined on April 20, 2015,

and that the nurse practitioner had been "unable to locate any tears to the victim's genital or anal

area."  Dkt. No. 13, Ex. E.  The nurse practitioner also testified that the genital and anal areas

"heal very quickly," sometimes as quickly as forty-eight hours from the time of trauma.  Id.

Although the evidence submitted by petitioner was not itself necessarily shown to the jury, the

information that evidence contained was.

Finally, it is clear that the Commonwealth's failure to produce the Martinsville Juvenile

and Domestic Relations Court records did not prejudice plaintiff.  Indeed, citing that court's

dismissal of charges raised against petitioner, petitioner's counsel moved to dismiss the

petitioner's indictments on a double jeopardy theory.  See Dkt. No 13, Ex. E.  The trial judge

dismissed the motion as frivolous.  See id.  It defies logic to believe that possession of the

Juvenile and Domestic Relations Court's documents would have changed the judge's mind.  See

17

id. (where trial judge ruled: "The only issue decided by the court not of record, in this case [Juvenile and Domestic Relations], was whether there was probable cause, and in Judge Bushnell's opinion there wasn't and he dismissed it. It seems to me that the law is quite clear that under those circumstances the Commonwealth can seek a direct indictment, which is exactly what they did in this case, and that has been the law of this Commonwealth for over 30 years.").[6]

Even ignoring the fact that petitioner has failed to satisfy the elements listed above, petitioner has additionally failed to establish that the material he claims not to have been provided was not available to him at the time of trial.[7] In that light, it is clear that petitioner is not entitled to relief under a Brady theory. See Stockton v. Murray, 41 F.3d 920, 927 (4th Cir. 1994) ("Brady does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense.").

### 3.  Double Jeopardy – Claim 4

In Claim 4, petitioner suggests that he was twice imperiled for the same alleged crime in violation of the Double Jeopardy Clause of the Fifth Amendment. See Dkt. No. 1-1, pp. 19-25. He further suggests that the charges raised against him were "multiplicitous" and thus invalid.

---

[6] Petitioner additionally repeatedly invokes Pennsylvania v. Ritchie, 480 U.S. 39 (1986), in support of his position. He suggests that the trial court failed, in violation of Ritchie, to view "in camera" documents produced by a state social services agency. See Dkt. No. 1-1, p. 13. But petitioner equally admits that the evidence he suggests the court should have considered "was produced post convict[ion.]" Id. Petitioner's own statements thus doom any hope of this claim's success. Before trial, the state could not have produced, nor could the court have reviewed, any documents produced after the trial had ended. Petitioner has therefore failed to demonstrate that the information he claims to have been denied "probably would have changed the outcome of his trial." Ritchie, 480 U.S. at 58. Petitioner is therefore not entitled to relief as to this claim.

[7] As discussed in footnote six, petitioner grieves the court's decision not to consider evidence that had not yet been produced by the time of trial. This information was, of course, not available to petitioner at the time of trial. For the same reason, though, the state cannot be held accountable for failing to produce that evidence in anticipation of trial.

Id. A scouring of the record reveals that petitioner never presented these arguments to the Supreme Court of Virginia. And because petitioner would be barred from raising the claims in state court were he to attempt to do so now, see Va. Code § 8.01-654(A)(2), (B)(2); Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974), the claims are procedurally defaulted and barred from federal merits review.[8]

Even if petitioner's claim were not untimely and otherwise procedurally defaulted, though, it would fail on its merits. Petitioner first suggests that, because the Martinsville Juvenile and Domestic Relations Court did not find probable cause with respect to a number of felonies of which he was accused, he was subjected to double jeopardy when he was later directly indicted for the same alleged behavior. See Dkt. No. 1-1, pp. 19-25. As previously noted, trial counsel moved to dismiss the indictments under this theory, and that motion was dismissed as frivolous. See Dkt. No. 13, Ex. E. This was so because, under Virginia law, "it is well-established that the Commonwealth may obtain an indictment from the grand jury charging an offense for which the district court has previously found no probable cause." Herrington v. Commonwealth, 291 Va. 181, 185 (2016) (citing Moore v. Commonwealth, 218 Va. 388, 394 (1977)).

The trial court's decision was not contrary to federal law. Indeed, because the Juvenile and Domestic Relations Judge was empowered only to make a probable cause finding with respect to the charges raised against petitioner, jeopardy had not yet attached, and the subsequent indictments therefore did not violate federal law. See Serfass v. United States, 420 U.S. 377,

---

[8] As noted above, petitioner has not satisfied the cause and prejudice or actual innocence standards such that his procedural default may be excused.

391-92 (1975) ("Without a risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.").

Petitioner's "multiplicity" argument is just as easily discarded. This is so in part because of the conclusory nature of petitioner's argument; although petitioner asserts that the charges were "multiplicitous," he does not state the manner in which that was so. Petitioner was undeniably charged with several counts of the same offense, but the witnesses at trial described conduct occurring on different dates and in different locations that supported the separate counts. And, as petitioner himself concedes, "[m]ultiplicity does not exist when the indictments are similar offense[s] ... based on distinct time periods or locations." Dkt. No. 1-1, p. 23. Cf. United States v. Goodine, 400 F.3d 202, 209 (4th Cir. 2005) (permitting separate convictions for firearm and ammunition possession because they "were seized at different times and in different locations" based on different evidence); Carter v. Commonwealth, 428 S.E.2d 34 (Va. App. 1993) (defendant who raped victim three times in single criminal episode could be convicted of rape three times because each act of intercourse constituted distinctive and separate offense under Virginia law). Consequently, it is clear that Claim 4 is without merit and must be denied.

**D.** **_Merits / Cognizability Analysis_**

Respondent asserts that Claim 1B, to the extent it is exhausted, does not entitle petitioner to relief and, to the extent it is not exhausted, is not cognizable in federal court. He further argues that Claims 3 and 5 are not cognizable on federal habeas review. Petitioner offers no rebuttal to respondent's position. As explained below, respondent is correct that petitioner is not entitled to relief with respect to any of these three claims.

1.     **Unreliability of Witness Testimony – Claim 1B**

In Claim 1B, petitioner asserts that the testimony provided by several prosecution

witnesses was unreliable.[9]  The Court infers from this argument that petitioner believes a valid

conviction may not rest on such allegedly incredible testimony.  To the extent that petitioner

sought to raise this claim to argue that the evidence underpinning his convictions was insufficient

as a matter of law, he is not entitled to relief.  Petitioner exhausted this claim by appealing a

sufficiency argument to the Supreme Court of Virginia both on direct appeal and during state

habeas proceedings.  Because the state courts considered this argument on the merits, this Court

may look only to whether those courts came to a conclusion that is contrary to federal law or that

rested on an unreasonable interpretation of facts.  28 U.S.C. § 2254(d)(1)-(2).

A sufficiency of the evidence claim should be granted by a federal court only if "no

rational trier of fact could have found proof of [petitioner's] guilt beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 324 (1979).  Indeed, a federal court may grant relief only if

the state court's decision was "objectively unreasonable;" a reviewing federal court may not

overturn the state court's decision simply because it disagrees with the outcome.  Cavazos v.

Smith, 565 U.S. 1, 3 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Bearing in mind that it is not the role of a federal court to review or assess the credibility

of a state court witness, see Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008), a thorough

review of the state court records in this case reveals that the state courts decisions' were not

---

[9] A with Claims 1A and 1C, petitioner did not raise this argument as an independent ground for
relief.  Instead, because Claim 1 of petitioner's petition was rambling and failed to hold together
in a coherent fashion, Claim 1B has been extracted from the petition to ensure petitioner receives
consideration of each of the theories he may have intended to present.

unreasonable and that a reasonable trier of fact could consider the evidence presented at trial and

conclude that petitioner was guilty beyond a reasonable doubt.  This claim is thus denied.

### 2.    State Court's Failure to Consider Arguments – Claim 3

In Claim 3, petitioner contends that the Supreme Court of Virginia erred when it declined

to consider the novel arguments he raised in his rebuttal to respondent's motion to dismiss filed

in the state habeas proceedings.  See Dkt. No. 1-1, pp. 17-18.  Respondent is correct that this

claim is not cognizable.  Indeed, "[c]laims of error occurring in a state post-conviction

proceeding cannot serve as a basis for federal habeas corpus relief."  Bryant v. Maryland, 848

F.2d 492, 493 (4th Cir. 1988).  Consequently, this claim must be dismissed.

### 3.    Actual Innocence – Claim 5

In Claim 5, petitioner asserts that he is actually innocent of the crimes for which he was

convicted.  See Dkt. No. 1-1, pp. 25-29.  He repeatedly states that a claim of actual innocence

constitutes a means to receive federal review of otherwise untimely or procedurally defaulted

claims.  See Dkt. No. 1-1, p. 26.  In that respect, as discussed above, petitioner is correct.  But to

the extent petitioner raises his actual innocence argument not to receive review of his barred

claims but as a freestanding claim for relief, he is advised that such a claim is not cognizable in

federal habeas corpus proceedings.  See McQuiggin, 569 U.S. at 392;  Herrera v. Collins, 506

U.S. 390, 404-05 (1993) ("We have never held that [habeas relief] extends to freestanding claims

of actual innocence.");  Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006) ("[C]laims of actual

innocence are not grounds for federal relief even in a capital case.").  Consequently, Claim 5

must be dismissed.

## V.  Conclusion

For the foregoing reasons, petitioner is not entitled to federal habeas corpus relief. Accordingly, respondent's motion to dismiss shall be granted, and the petition will be dismissed with prejudice through an order that will issue alongside this memorandum opinion.

Entered this __10__ day of _____July_____ 2020.

Alexandria, Virginia

_____/s/_____
Liam O'Grady
United States District Judge

23